IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| WILLIAM CASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 305-063 |
| | ) |
| RALPH M. KEMP, et al., | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate currently incarcerated at Wheeler Correctional Facility, in Alamo, Georgia, brought the instant complaint pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A.

For the reasons explained herein, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim.

**I. BACKGROUND**

Although far from pellucid, *liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff has named three Defendants: 1) Ralph M. Kemp, the Warden at Wheeler Correctional Facility ("Kemp"), 2) FNU Herman, an "intake" officer ("Herman"), and 3) FNU White, an "intake" officer ("White"). According to Plaintiff, his troubles began

when he was transferred to Wheeler Correctional Facility ("Wheeler") in November 2004.[1] (Doc. no. 1, p. 7). According to Plaintiff, when he arrived at "intake" at Wheeler, he was told that an assortment of personal property (*i.e.*, his radio, colored pencils, calculator, necklaces, and ink pens) were "contraband" and he would have to make arrangements to have these items sent "home." (Id.). Meanwhile, due to an oversight related to Plaintiff's intake paperwork, Plaintiff did not receive phone or visitation privileges, so he was unable to get in touch with his mother and sister and let them know that they needed to come pick up his property. (Id.). Unaware that Plaintiff had been transferred, Plaintiff's mother and sister went to visit him at Dodge State Prison, his former place of incarceration. (Id.).

When Plaintiff's relatives finally found their way to Wheeler, due to the aforementioned mix-up, they were not allowed to see Plaintiff or pick up his property. (Id.). Plaintiff's difficulty in getting his visitation and phone privileges approved would last for two weeks. (Id. at 8). In late December, Plaintiff went to "intake" to talk to Defendant White and inform her that his family would be coming in January to pick up his property. (Id. at 9). However, when Plaintiff's relatives arrived, they were told that Plaintiff's property could not be found. (Id.). Apparently, Plaintiff's property was later found, and Defendant White allowed Plaintiff to see the property and verify that none of it had been lost. (Id.).

In late January, Defendant Herman told Plaintiff that a package from Dodge State Prison containing items belonging to Plaintiff had arrived. (Id. at 10). Plaintiff decided to have his relatives take home all of his property. (Id.). However, when his family arrived, they discovered that some of Plaintiff's property was missing. (Id.).

---

[1] The Court is aware that Plaintiff makes reference to "Nov. 16-05," however, as this date is in the future, the Court assumes Plaintiff is referring to 2004. (Id.).

Plaintiff avers that "intake" has treated him unfairly by losing his property. (Id. at 11). In addition, Plaintiff complains that his property was not "contraband" and that other inmates were allowed to keep similar property. (Id.). Indeed, Wheeler officials issue inmates colored pencils just like Plaintiff's. (Id.). As relief, Plaintiff seeks $8,000.00 in damages. (Id. at 12).

## II. DISCUSSION

Plaintiff's complaint, even construed liberally, fails to state a viable claim. First, Plaintiff attempts to sue Defendant Kemp, although he does not allege that Defendant Kemp was personally involved in the loss of Plaintiff's property. At best, Plaintiff blames this Defendant for the acts of his subordinates, but "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted, Plaintiff has not alleged that Defendant Kemp was personally involved in the storage of Plaintiff's property.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Kemp and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history

of widespread abuse[2] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that Defendant Kemp knew about any widespread abuse or that he was responsible for a custom or policy which results in the loss of inmate property. In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Kemp.[3]

As to Defendants White and Herman, even if Plaintiff's property was lost due to their

---

[2] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[3] Moreover, if Plaintiff is attempting to state a stand alone claim for an alleged failure to properly process his grievances, that allegation, too, fails to state a claim for relief. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. In a nutshell, Plaintiff's bare allegations concerning deficiencies in processing his grievances do not implicate his federal constitutional rights. See id.; see also Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (*per curiam*) (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").

4

"ineptness" as Plaintiff charges, Plaintiff's claims regarding the loss of his property fail as a matter of law. (Doc. no. 1, p. 5). The deprivation of a constitutionally protected property interest by a state employee's random, unauthorized conduct does not give rise to a procedural due process claim, unless the state has failed to provide a post-deprivation remedy. See Parratt v. Taylor, 451 U.S. 527, 543 (1981), *overruled in part by* Daniels v. Williams, 474 U.S. 327, 330-31(1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984). Parratt dealt with negligent deprivations of property, and explained that negligence is not a recognized basis for recovery in a § 1983 action. Parratt, 451 U.S. at 543; see also Daniels, 474 U.S. at 330-31 (1986). Hudson later extended that holding by explaining that post-deprivation remedies may provide due process where the deprivation was intentional, rather than negligent, so long as it was random and unauthorized. Hudson, 468 U.S. at 533.

Thus, if a post-deprivation remedy exists, Plaintiff's case does not give rise to a due process claim, regardless of whether a negligent or intentional act by a state employee led to the deprivation. Here, Georgia clearly offers Plaintiff a post-deprivation remedy in tort. See Byrd v. Stewart, 803 F.2d 1168, 1170 (11th Cir. 1986)(*per curiam*), *vacated on other grounds by*, 811 F.2d 554 (11th Cir. 1987)(*per curiam*). Thus, a remedy in state court is available to Plaintiff. Put plainly, because Plaintiff has failed to describe any loss of his property--intentional or otherwise--which cannot be remedied by an appropriate post-deprivation hearing, his claim is simply a state law tort claim that does not arise under § 1983.

Of course, it is conceivable that Plaintiff's references to "prejudice" and the unfairness of not being allowed to keep his property are attempts to state an equal protection claim. (Doc. no. 1, p. 5). However, here Plaintiff's complaint also fails. In order to state a

5

valid equal protection claim, a prisoner must show: 1) that he has been treated differently from other "similarly situated" inmates, and 2) that this discriminatory treatment is based upon a constitutionally impermissible basis such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001)(*per curiam*). Plaintiff's conclusory allegation that other inmates have been able to keep colored pencils is insufficient to show the existence "similarly situated" individuals who have received more favorable treatment, and Plaintiff has made no attempt to suggest that his property was taken from him on the basis of his race or any other constitutionally protected characteristic.

Finally, the Court staves off any argument that Plaintiff's constitutional rights were denied when he was temporarily denied visitation and phone privileges by mistake. First, it should be pointed out that prison officials are clearly entitled to impose limits on inmate visitation and access to telephones. See, e.g., Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989)(inmates have no constitutional right to unrestricted visitation); Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996)(upholding prison telephone regulation). More specifically, a prisoner has no absolute right to visitation from particular individuals at a particular time, even family members. Evan v. Johnson, 808 F.2d 1427, 1428 (11th Cir. 1987)(*per curiam*). Indeed, some courts have simply held that an inmate "has no constitutional right to visitation privileges." Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999)(citing McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir. 1975)).

More importantly, a change in an inmate's conditions of confinement does not implicate the liberty interests protected by the Due Process Clause unless the restraint poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Here, a mistake led to the denial of visitation and phone privileges for roughly two weeks. The Court is not persuaded that this deprivation amounted to an "atypical and significant hardship" when compared "to the ordinary incidents of prison life." In Sandin, the Supreme Court expressly held that a Hawaii prisoner's thirty-day stint in administrative segregation did not implicate a liberty interest protected by the Due Process Clause. 515 U.S. at 487. The instant case is analogous. See, e.g., Phillips v. Morris, 320 F.3d 844, 847 (8th Cir. 2003)(loss of visitation and exercise privileges for 37 days did not pose an "atypical and significant hardship"). In sum, although regrettable, Plaintiff's temporary loss of visitation and phone privileges did not constitute an injury of constitutional magnitude.

Simply put, the instant complaint does not bring any claim cognizable under § 1983.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted.

SO REPORTED and RECOMMENDED this 9th day of November, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE